Secretary of Veterans Affairs, 2020-2199. We'll hear from Mr. Carpenter when he is ready. May it please the Court, Kenneth Carpenter appearing on behalf of Mr. Willis Breland. The Court below held that the procedures in the note to Diagnostic Code 7343, specifically that an examination take place six months after the succession of treatment and a contemporaneous notice of any reduction are prospective. That is a misinterpretation of that note. The Court went on to say that thus, when the VA retroactively awards service connection, that the disability rating for malignant neoplasms of the digestive system, these procedures are not strictly applicable and VA's inability to apply them does not require an indefinite continuation of a 100% rating. That is at Appendix 2 and repeated again at Appendix 9. The misinterpretation that occurs here occurs because the instruction or excuse me, because the Court misinterpreted the Diagnostic Code rating available. There is only one rating available and that's 100%. Any other ratings that are derivative from the original disability are rated as residuals. That is the purpose and the function of the examination. And there was no examination in this case. The Veterans Court responded to the government's argument which was intuitive that it was simply impossible to do it after the fact. It was not impossible to do it after the fact because the only limitation to the 100% rating was an examination that disclosed the presence of residuals and then those residuals needed to be rated. In this case, the Court made the erroneous assumption that there was a staged rating because of the Reisenstein case. This is not a case involving staged ratings. There is only one rating available. What was done in this case was that the VA assigned a 100% rating and then reduced it to 0% for the same condition, not for residuals. This is a very unusual case. Yes, it is, Your Honor. So we're talking about a huge span of years and where the actual award was based on new evidence that the claimant submitted, right? The new doctor's report. During the course of his appeal, yes. But not as part of the claim. It was part of his ability to prove his claim. Right. So when the original claim was filed, he didn't have that. That's correct. All right. So are we to assume that the 100% rating would stay viable and available for 30 years if the new evidence was not forthcoming until then? Well, Your Honor, respectfully, I think that that's the error that the Veterans Court made in trying to analyze it through that lens. The question really here is not about the continuation of the 100%, although that's pertinent. What is relevant here is the misinterpretation made by the Veterans Court permits the VA to repeat this same error, which is why this appeal is critical, because it is important for this court to interpret the plain, unambiguous language that there is only one rating assigned for the primary condition. Thereafter- Mr. Carpenter, wouldn't that error that you're talking about, them repeating, wouldn't that error only occur in a situation like this one where you're looking at where the initial claim for service connection is denied? No, Your Honor. Well, if the whole point, if they could look at it, if they're only looking at it prospectively, which wasn't, it couldn't be the situation here. It could only be looked at retrospectively because of the original denial of the claim. I don't understand how it could apply if in someone provided the claim that service connection was allowed before the medical examination could occur. Let's assume hypothetically a different set of facts, that the facts in this case were a denial and within a year, the VA agreed that they had made an original mistake and that it should have been granted. Under the interpretation relied upon by the Veterans Court, the Veterans Court permits the VA to assign a 100% rating and then reduce that rating to 0%. That is not contemplated by the regulation. What is contemplated by the regulation is, is that the 100% rating will be assigned upon the secession of treatment. That can be done, quote, retrospectively based upon a prospective award. What cannot be done and what is impermissible is what was done here to fail to provide the examination, to prevail to provide the notice because the notice is the results of the examination. To make sure I understand, your point is that anything based on the residuals here should have been provided at the time of the medical examination. Yes. What happened here was during the course of this approximately nine years worth of litigation, once he got counsel, we were able to get into the record information about the residuals. They rated the residuals. There was a quarrel about the rating and the effective date. Now, those residuals are in fact rated all the way back to the date which should have been the succession of the 100%. Is it your view that what the VA had done here was say, we will give you 100% residual until we ultimately did the evaluation and then we reduce it at that point in time? Well, you don't actually reduce it. It ends the 100% rating and a new rating is assigned based upon the residual. In this case, it would have been a reduction. In this case, yes, that is correct. I need a point of clarification. Here, the 100% rating went for six months after the surgical date. I heard you to be saying that you had a different case involving the residuals and that ultimately after lots of fighting, I guess, you were able to get it back to what date? I didn't hear it. To the date that the 100% ended. What is the problem? After the six months, meaning? What is the problem? It took nine years to get it and when he got it, they rated them separately and independently as opposed to what is mandated by the note, which is you do it at the time in which the 100% ends. That is why you do the examination and that is why you provide note. I understand what you are saying, but right now, I understand you to be saying that the residuals were awarded from the time at the end of the 100% rating. Is that right? Yes, because he had to separately litigate it because the VA did not follow its own note in its diagnostic code that explains and directs with specificity how the rating is to be assigned. I understand, but your point is that as a penalty for that mistake, there should be a 100% rating even though there were residual ratings. There should also be a 100% rating. I am saying that that should be the way in which the regulation is interpreted. Just to clarify, what you are saying is the residuals should be 100% only until the evaluation occurred and then going forward, it should be less than 100%? I am having trouble with your reference to the residuals. In other words, the 100%, whether you call it residuals or not, what you are saying is that until the point of the evaluation with the new number, it should have been 100%. It would not be 100% plus the residuals. It would be 100% instead of the residuals. That is correct. The effect is the same in this case because they have corrected it to the point where the 100% rating is in effect and he has a 60% rating for those residuals. That makes him eligible for special monthly compensation because he has one disability, the underlying neoplasm, and additional disabilities rated at 60. That is the reason that this needs to be corrected. The assignment of the 100% rating, I do not believe as a penalty, but as a regulatory obligation, is what is required by what they wrote in their note. The fact that they did not do it correctly is something that could have been avoided by doing the exam contemporaneous with the award. They did not do an exam. As a result of not doing an exam, there was a delay in agreeing that in fact residuals were present and were required to be rated by this note. But even if they had done it contemporaneous with the award, there still would have been a gap, quite a gap, a lot more than six months, right? I am not sure that is true, Your Honor. I think had they followed the note at the time in which the grant was made, nine years after the fact, assigned the 100%, ordered an exam, that exam revealed the residuals, which it clearly would have, and assigned an appropriate rating back to the date of the end of the 100%, then I think they would have evaded or avoided the assignment of the 100% continuously. I would like to reserve the balance of my time. Thank you, Your Honor. We will save it for you. Ms. Fulman-Cover? Good morning, Your Honors. May it please the Court. In this case, we agree that the Veterans Association of Treatment that is referred to in Diagnostic Code 7043 applies prospectively and not retroactively. We submit that that decision was correct and should be affirmed by this Court because it is consistent and complies with the plain language of the note as the Veterans Court held. It speaks in future prospective terms. But moreover, it ensures that veterans are treated consistently and fairly and that they are rated and are given benefits based on the actual progression of their disease and not the irregularity. The whole point, as it says, as you say, in the Federal Register, was to make sure that they're not just cut off because of a passage of time and that you have medical bases to cut them off. And so when you say it's meant to treat them fairly, what you told the world in the Federal Register is that treating them fairly is not to cut them off until you had a medical basis for doing so. Exactly, Your Honor. And we submit that that's what happened here because it was rated. So when ratings are assigned prospectively, we don't know how the disease will progress. We don't know if six months out from treatment, the veteran will actually be better if the surgery worked or the chemotherapy worked. And so the examination is necessary at that point in time to ensure, as we told the world, that they, in fact, are cancer-free. And as you told the world, until that point, you will give them 100 percent until you do that evaluation. So it was until the point that we have the evidence to know that they are, in fact, cancer-free. Your point is that when you look at it retrospectively, you actually have all the facts and the record in front of you so you can figure it out based on the facts and the record as opposed to a medical examination that can't occur. Exactly, Your Honor. Because he was rated retroactively in 2015, eight years out from when his cancer was treated and he was found to be cancer-free, at that point in time, the VA knew and the Veterans Court found that the VA had a clear picture of his medical history and therefore knew the periods in which he had cancer and the periods in which he didn't have cancer. How common is this scenario here where you have to look at it retrospectively for this particular note and this particular diagnostic code? How common this is? So, Your Honor, I don't have those facts offhand. I do know that the VA, you know, this is not a singular case. The VA does assign ratings retroactively and that particularly in this case where the service connection had to be established on a direct basis and was ultimately established on a direct basis. I would guess that this is not the only time that ratings are assigned retroactively. In a situation like this where the Veteran has to go through all sorts of litigation, all sorts of trouble in order to get what they were entitled to begin with, why should it be that this note wouldn't apply to them? Why wouldn't they? The note doesn't distinguish between retroactive and prospective, so why isn't there something? If it's common for this to be retroactively applied, why doesn't the note address that scenario? So, you make three points in response to that. One, I don't know how common it is. I would imagine this is not the first time it's happened, but I don't want to suggest sort of that it's more common. Well, there's lots of statistics out there. There's lots of statistics that it's not uncommon for it to take a really long time for Veterans to get benefit awards that they are entitled to, right? We have a couple cases where judges have outlined, you know, that sometimes it takes decades. In this case, Mr. Carpenter is saying it took nine years. So, it's clearly not uncommon. Sure, but the point is that under the Veterans Court regulation, the amount of benefits that the Veteran gets is consistent and is based on the progression of their disease. So, wherever along the timeline of the disease progression, the service connection is ultimately established, that doesn't affect the number of benefits that they get. In this case, Mr. Breland, undisputedly, during the periods in which he had cancer and six months at least after the cessation of treatment, was rated 100% for those benefits. So, is there anything in the note or the regulation or frankly in the Federal Register where you said, we will do it this way, that the evaluation that we will do, the medical evaluation is what would change it from 100%? Is there anything in there where you said, unless we can find from some other evidence in the record that we should have changed it anyway? So, Your Honor, I think it's the way that the Veterans Court explained it. Yes or no? Is there anything written into either the regulation itself or the note or the Federal Register where you said, we could also use an alternative mechanism to figure out what his health status was? So, they didn't say that explicitly. What instead the Veterans Court found is that the language in the note and the language in the Federal Register was speaking in prospective terms and it was about ensuring that a veteran would not be cut off from benefits that he is currently receiving without the notice and comment and without the opportunity to sort of submit additional evidence. So, if it goes 15 years before he gets any award, that it's only then that we care about whether he's being cut off? Exactly, Your Honor. As opposed to the fact that he should have had it from day one? Because he's not being cut off. He is, at the point in time when Mr. Breland received benefits in 2015, he was not in 2007 or 2008 losing benefits that he was receiving at that point in time. It was a stage rating because it was assigned at 100% for the periods in which he had cancer and 0% initially in the periods in which he didn't have cancer and then that was increased through subsequent appeals for the residuals that were established. I get your argument about with respect to whether or not notice had to be provided because it talks about whether you're being cut off, but I'm having a much harder time reading that language into the note and the regulation that's at issue here. Well, so the regulation, as highlighted by the Veterans Court, it speaks in forward-looking terms. It talks about continuing a rating, which necessarily implies that the rating exists at the time in order for it to be continued. And it references Section 3.105E, which has consistently been interpreted both by the VA and is recognized by this Court as not applying in a retrospective and staged context. If your view is correct, then why did they award residuals all the way back to 2007? Well, because the benefit of the note, the sort of the vision of benefits that this note had is that it was based on the progression of the disease. And so where you have cancer, you get 100%. And then for six months after the cessation of treatment, we continue that 100%. So that way we ensure that you, in fact, have gotten better and the treatment worked. And then, as the note says, if there has been no local recurrence or metastasis, then you rate on residuals. And that's what the VA did here. So in terms of the sort of the line of benefits to the progression of Mr. Breland's disease, he matches and got the full benefit of what this note envisioned as the Veterans Court held. Now, we happen to have relied on the medical evidence that were supplied by his oncologist rather than a VA oncologist in order to determine what the actual progression of his disease was because it was rated retroactively in 2015. And so we looked at the evidence that was provided by the doctor that was treating him. I guess I'm just having a hard time with the fact that you describe your regulation in the notice and comment and even in the final rule as saying, we're going to not base this just on passages of time and markers in time. We're going to base it on what we, the VA, decide based on a subsequent evaluation. I guess I'm having a hard time reading into that that you could base it on anything else. So, Your Honor, I think when the note was posted for notice and comment in order to amend this note, and this is something highlighted by the Veterans Court, was that they wanted to base it on actual medical findings and not just the passage of time or regular presumption. I get that. But then you said how you were going to obtain those actual medical findings. And you didn't say, you didn't put the burden on the veteran to give you medical findings saying he continued to have cancer or that his residuals were at 100% level. You put the burden on the VA to get that medical determination. And you said how you were going to get that medical determination. It certainly are. And I think sort of in a prospective situation, you know, when one service, if service connection is established, when the cancer is either sort of ongoing or being treated, then the VA did take that burden and we would examine the veteran at that point in time because he was already sort of under the umbrella of service connection. But in this case, at the time when Mr. Breland was six months out from his cancer treatment, there's no dispute that he had not, did not have service connection for his cancer. What was it specifically? At that time, had the RO already denied his claim or was it being considered? So there's two, the two six-month period. So the first one in, I believe it is in August of 2007. At that point in time, his first case was pending. It was considered and denied in December of 2007. And then the second one, the September 2007. The six-month period ended August 1st, 2007. And his request for service connection hadn't even been considered yet. So it was, it was pending. It was denied in December of 2007. I understand. But at the time that his six months ended, it hadn't been, no determination had been made yet. His request was being considered still. Correct. And then in 2008, at that point in time, which is sort of the start of the longer decade that's at issue here, it had been denied and he had not filed his notice of disagreement. So at that point in time, the case stood denied and he had not indicated that he disagreed with that denial. What I'm having, to me this is really statutory interpretation, regulatory interpretation. You use the phrase mandatory VA examination. You did not say a mandatory examination or any examination. You said there must be a mandatory VA examination before the 100% is cut off. I'm having a hard time getting around with the, around the very language that the VA chose. Certainly, Your Honor. And I think that the key distinction there is that it is mandatory when benefits are going to be cut off. But when they're rated retrospectively and staged, they are not being cut off. Because at that point in time, sort of once Mr. Breland received benefits in this case, they've only been increased. They've actually never been decreased from that point in time. Because when it was assigned in 2015, they were sort of automatically staged to the periods in which he had cancer and when he didn't have cancer. So I agree with Your Honor. Your point, and I make this clear, you're relying on the language in the note at the And so if there is no rating of 100% at that time, at the six months after discontinuance, this isn't applicable. Is that your point? There's nothing to continue at that point in time. That's what, sort of, that was one of the things that the Veterans Court noted. The way that the... The only reason it wasn't given is because there had been a failure to award in the first instance and a long delay in realizing that it should have been awarded. Well, Your Honor, there's no dispute that this condition was one that required establishing service connection on a direct basis. So I agree with the court that we didn't have evidence of that sufficient for the VA to grant that until later. I don't think that, given that absence of evidence, it was an error for them not to award it in 2007. But the point is, yes, at the time that service connection was established in this case, it was after Mr. Vreeland had completed his cancer treatment and we knew what the progression of his disease was. And he was rated in accordance with the progression of that disease. He got, as the Veterans Court noted, the full benefit of the note to note 7343 because he got benefits that would have been identical to what he would have gotten if he had established a service connection in 2007 and we were proceeding progressively. He would not have gotten this 100% rating for this decade in which he had cancer. But how do we know? Because by the time there was a residuals examination, we have no idea what the residuals would have been much closer in time. I mean, he did have a recurrence. And he got, well, and so when he got rated 100% for that recurrence, the point is... But he didn't get rated 100% for the period in between. Correct. He got rated on the residuals for the period in between. But not at 100%. No. We don't know what those residuals really were closer in time to the event. Well, we do because we have the medical evidence from his actual treatment there. And so the VA relied on the medical evidence. And the holding of the Veterans Court in this case was that Mr. Vreeland was rated consistent and in accordance with what his actual medical evidence showed. I mean, as it relates to active cancer, but not as it relates to the residuals. Because by the time they even looked at the residuals, it was much, much later in time. Well, Your Honor, I guess, first of all, the question of the residuals, I think, is beyond the scope of this appeal. This appeal is just about whether or not he should get the 100% cancer rating during that decade. But I think based on the fact findings made by VA, it was not irrelevant. Because that's one of the points is that until we know what the residuals are, we're going to assume it's 100%. So, Your Honor, I don't think that that's what the regulation says. The regulation, because if you don't have any residuals, then you get zero. So the point of the regulation here, which is dealing with the cancer benefits, is that we want to make sure before we cut off your cancer benefit, that you actually don't have cancer anymore. And that's what the VA explained in the Federal Register when it published the note that, you know, we want to ensure that we are rating people consistent with medical reality. And so we want to make sure that when we stop giving them 100% rating for cancer, they actually don't have cancer anymore. And in this case, the medical evidence was there and the Veterans Court noted that it was clear and that the VA had a clear picture of Mr. Breland's health. And so it assigned him the 100% benefits when he had cancer and for the six months after treatment. And when it knew that he was cancer-free, it assigned him benefits based on the residuals that are not, the amount of the residuals are not in dispute in this appeal. And the fact- But they changed repeatedly throughout the course of time, right? I'm not sure offhand. I know for sure that he's been rated on residuals and he's been rated on residuals during the periods when the medical evidence showed that he was cancer-free. And so I think I'm out of time. So I will just conclude by saying that the application of this medical examination makes sense prospectively and it does not make sense retroactively. Even under your theory, how do you disagree with the dissent at the Veterans Court who said, at minimum, he should have been 100% until after the 2008 treatments? So I think the dissent did raise a fact-finding issue that obviously the majority disagreed with. The board made a factual finding that the medical evidence showed that he did not have cancer during that window from August 2007 through January 2008. And so based on that medical evidence, they rated him on residuals rather than the cancer, consistent with what the didactic code to note 7343 said. Thank you, counsel. Mr. Carpenter has some rebuttal time. May it please the court, I'd like to begin first with an observation that the entire evaluation. What 1110 requires is that the Secretary of the United States of America shall pay compensation when there is a resulting disability. They didn't do that. What they did was they didn't follow their own note. The note says you get an examination. Now what happened here was the original grant was made and it was necessary for Mr. Breland to appeal that because what it did was it granted a 100% and in parens it says active malignancy and treatment period and then a non-compensable rating for an inactive disease. Now there are other diagnostic codes that provide for that. This diagnostic code does not. There is no non-compensable rating. One rating, 100% and that 100% stays in effect until an examination and a notice, neither of which took place. Therefore, the plain language of the note requires that the 100% stay in place. The revisionist history that both the VA went through in making its argument both before the lower court and here and the veterans court is the personification of post hoc rationalization. Let's rationalize an outcome, excuse me, a reason for this outcome. This with the plain language, the unambiguous language of a note that the secretary wrote and that he published in the Federal Register and gave every veteran reason to believe. Now this is supposed to be a veteran friendly system in which the veteran is supposed to be given due consideration. It was the VA that got due consideration, not Mr. Breland. Mr. Breland was entitled to the benefit of this note. He did not receive the benefit of this note and it's critically important for this court to explain to both the lower court and to the secretary that when the secretary writes a regulation that is unambiguous, then it means what it says and it will be enforced as written. Thank you very much. Thank you, Mr. Koppeler. We will note your argument. The case is submitted.